UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**VALERIE SNYDER ,**

                           **Plaintiff,**                                         19-CV-185Sr

v.

**COMMISSIONER OF SOCIAL SECURITY,**

                           **Defendant.**

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #13.

## BACKGROUND

Plaintiff applied for disability insurance benefits with the Social Security Administration ("SSA"), on October 13, 2015, alleging disability beginning May 1, 2015, at the age of 48, due to left knee surgery, left knee arthritis and herniated discs. Dkt. #6-3, p.3.

On March 6, 2018, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Ken Jones, at an administrative hearing before

Administrative Law Judge ("ALJ"), Stephen Cordovani. Dkt. #6-2, pp.31-79. Plaintiff testified that she did not finish high school and quit her job in housecleaning at a hotel when she injured her knee and has not returned to work because she is always in pain and has anxiety. Dkt. #6-2, pp.39-43. Plaintiff's pain did not diminish following surgery. Dkt. #6-2, p.45. She described the pain as similar to a toothache on her tailbone which slides down the left knee like shooting pains three or more times a day. Dkt. #6-2, p.46. She has a driver's license but cannot drive far because her back pain will radiate down her legs and she can hardly walk when she gets out of the car. Dkt. #6-2, pp. 37 & 44-46. She cannot walk more than ten minutes at a time. Dkt. #6-2, p.47. She changes position approximately every 15 minutes. Dkt. #6-2, p.48. She can lift a gallon of milk or 5 pound bag of potatoes. Dkt. #6-2, p.49. Plaintiff's daughter or sister helps with the cleaning and changes her cat's litter box because plaintiff can't bend from the waist or squat or kneel. Dkt. #6-2, pp.49-50 & 52. She continues to have difficulty putting on socks or shoes. Dkt. #6-2, p.50. She cooks approximately once a week, but otherwise relies upon the microwave or her sister or daughter to bring her meals. Dkt. #6-2, p.51. She may try to vacuum or wash dishes, but after 5-15 minutes, needs to rest for a half-hour. Dkt. #6-2, pp.52 & 58. Plaintiff tries to refrain from painkillers, but takes Tylenol, Motrin 800 and Voltaren and uses the heating pad on her lower back and ice on her knee every day for comfort. Dkt. #6-2, pp.44 & 46. She uses a knee and back brace for stability. Dkt. #6-2, p.47.

The VE testified that plaintiff's past relevant work was as a cleaner; housekeeping, which is an unskilled position requiring light exertion. Dkt. #6-2, p.73.

When asked to assume an individual of the same age and education as plaintiff who was limited to light exertional activity and occasional ramps, stairs, bending, kneeling, crouching and crawling with no ladders, ropes, scaffolds or work on uneven ground, the VE testified that such an individual could work as a housekeeper, explaining that such a position was consistent with the limitation of occasional stooping, kneeling and crouching. Dkt. #6-2, p.74-75. The VE testified that plaintiff could also work as a marker, mail clerk or garment sorter, each of which were unskilled, light exertion positions. Dkt. #6-2, p.75. If plaintiff was limited to sedentary work, the VE testified that she could work as a food and beverage order clerk or charge account clerk, each of which were unskilled sedentary positions. Dkt. #6-2, p.75. When asked if any of the positions would accommodate a sit/stand option, the VE testified that the marker and garment sorter would remain an option. Dkt. #6-2, p.77.

The ALJ rendered a decision that plaintiff was not disabled on May 16, 2018. Dkt. #6-2, pp.8-25. The Appeals Council denied review on December 18, 2018. Dkt. #6-2, p.2. Plaintiff commenced this action seeking review of the Commissioner's final decision on February 11, 2019. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has

sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 1, 2015; (2) plaintiff's herniated lumbar disc status post fusion surgery at L5-S1, osteoarthritis and chondromalacia of the bilateral knees, left knee meniscal tear status post surgical repair and obesity constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the residual functional capacity to perform light work[1] except that she can only occasionally bend and climb ramps and stairs, kneel, couch and crawl and cannot climb ladders, ropes or scaffolds or work on uneven ground; and (5) plaintiff was capable of performing her past work as a cleaner; housekeeping, and was also capable of working as a marker, mail clerk or garment sorter, each of which were unskilled, light

---

[1] Light work involves lifting no more than 20 pounds at a time and occasionally lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of dexterity or inability to sit for long periods of time.
20 C.F.R. § 404.1567(b).

exertion positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #7, pp.22-27.

Plaintiff argues that it was not proper for the ALJ to rely upon the consultative examination to determine plaintiff's RFC because plaintiff's condition deteriorated between that examination and the time of her hearing. Dkt. #8-1, pp.15-21. Specifically, plaintiff argues that the medical opinion evidence does not address plaintiff's functioning subsequent to invasive back surgery and diagnosis of bilateral osteoarthritis of the knees and that the ALJ improperly substituted his own lay opinion for competent medical opinion with respect to this time period. Dkt. #8-1, pp.21-25.

The Commissioner responds that the opinion and objective medical evidence support the ALJ's determination that plaintiff retained the ability to perform light work with limitations. Dkt. #11-1, p.13. The Commissioner argues that the ALJ appropriately assessed the gap in treatment and normal examination findings subsequent to plaintiff's spinal surgery in reaching this determination. Dkt. #11-1, pp.14-15. More specifically, the Commissioner argues that there was sufficient evidence from which the ALJ could properly assess plaintiff's RFC at the time he rendered his decision. Dkt. #11-1, pp.15-20.

In deciding a disability claim, an ALJ is tasked with weighing all of the available evidence to make an RFC finding that is consistent with the record as a whole. *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013). However, an ALJ is not a

medical professional and is not qualified to assess a plaintiff's RFC on the basis of bare medical findings. *Biro v. Comm'r of Soc. Sec'y*, 335 F. Supp.3d 464, 469 (W.D.N.Y. 2018) (quotation omitted). Thus, the ALJ's RFC determination cannot be based upon raw medical evidence, but must be supported by competent medical opinion. *Goble v. Colvin*, 15-CV-6302, 2016 WL 3179901, at *6 (W.D.N.Y. June 8, 2016).

An ALJ may rely upon the opinion of examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *Baszto v. Astrue*, 700 F. Supp.2d 242, 249 (N.D.N.Y. 2010). However, medical source opinions that are conclusory, stale or based upon an incomplete medical record cannot constitute substantial evidence in support of an ALJ's determination of a plaintiff's RFC. *Camille v. Colvin*, 104 F. Supp.3d 329, 343-344 (W.D.N.Y. 2015), *aff'd*, 652 Fed. App'x 25 (2d Cir. 2016). While the mere passage of time does not necessarily render a medical opinion outdated or stale, subsequent surgeries and treatment notes indicating that a plaintiff's condition has deteriorated may. *Moon v. Comm'r of Soc. Sec'y*, 17-CV-1312, 2019 WL 2240235, at * 6 (W.D.N.Y. May 24, 2019). The determinative factor is whether a plaintiff's condition has materially changed subsequent to the medical opinion. *Oliver v. Comm'r of Soc. Sec'y*, 19-CV-443, 2020 WL 3073342, at * 5 (W.D.N.Y. June 10, 2020).

In determining plaintiff's RFC, the ALJ afforded great weight to the opinion of the consultative examiner, Dr. Miller, because of her program knowledge, detailed examination, and consistency of her opinion with the overall treatment record. Dkt. #6-

2, p.22. Dr. Miller examined plaintiff on February 2, 2016, and observed that plaintiff was able to rise from her chair without difficulty and needed no help getting on and off the examination table; her gait and stance was normal; her squat was 75%; and she could walk on heels and toes without difficulty. Dkt. #6-7, p.80. Upon examination, plaintiff's cervical spine showed full flexion, extension, lateral felxion bilaterally, and full rotary movement bilaterally. Dkt. #6-7, p.81. Plaintiff's lumbar spine showed flexion of 65 degrees, extension of 5 degrees, lateral flexion of 25 degrees bilaterally and rotation of 25 degrees bilaterally. Dkt. #6-7, p.81. She had full range of motion of hips, knees and ankles bilaterally. Dkt. #6-7, p.81. The Straight Leg Raise test was negative. Dkt. #6-7, p.81. Dr. Miller diagnosed plaintiff with chronic low back pain, herniated discs, left knee pain and bilateral foot pain and opined that plaintiff had a moderate limitation for lifting and carrying. Dkt. #6-7, pp.79 & 82. The ALJ recognized that plaintiff underwent surgery subsequent to Dr. Miller's examination, but determined that plaintiff "was doing well on last report in December 2016, and did not receive further treatment for her back until May 2017, after which objective findings on clinical examination and diagnostic testing did not explain her complaints. Dkt. #6-2, p.22.

On June 17, 2016, subsequent to Dr. Miller's examination, Dr. Sherban, performed an anterior reconstruction at L5-S1. Dkt. #6-7, p.352. Plaintiff underwent the second stage of the procedure, posterior reconstruction at L5-S1, on June 27, 2016. Dkt. #6-7, p.349. An MRI on July 20, 2016 revealed anterior and posterior fusion at the L5-S1 level without radiographic complication, with restoration of the intervertebral disc space. Dkt. #6-7, p.358. Upon follow-up examination by orthopedic spinal surgeon

Rodrigo Castro on December 21, 2016, plaintiff reported that she was progressing well since surgery but was experiencing lumbar spine pain with radiculopathy to her extremities bilaterally. Dkt. #6-7, p.369. Dr. Castro opined that plaintiff was doing well and advised her to continue wearing her back brace and increasing activity and ambulation as tolerated. Dkt. #6-7, p.372.

Between January 4, and May 10, 2017, plaintiff's primary care physician, Dr. Sadiq, routinely noted that she was tender to palpitation to midline spine in the lower lumbar region and observed both that plaintiff's gait was slow and that she was slow to stand from a sitting position. Dkt. #6-9, pp.111, 116, 121, 125.

On May 11, 2017, plaintiff sought a second opinion regarding persistent back pain and radicular symptoms following her L5-S1 lumbar fusion from Dr. Stroffman at University at Buffalo Neurosurgery. Dkt. #6-8, p.58. Motor testing demonstrated 5/5 strength throughout the lower extremities bilaterally and both proximally and distally with deep tendon relflexes of 2+ and no significant midline tenderness over the lumbrosacral spine. Dkt. #6-8, p.59.  An MRI on July 19, 2017 revealed L5-S1 anterior and posterior fusion with no evidence of spinal stenosis or disc herniation. Dkt. #6-8, p.62. On August 9, 2017, Dr. Stroffman observed that plaintiff ambulated with a normal gait and station and determined that her low back and sacroiliac joints were nontender to palpation. Dkt. #6-8, p.63. She had symmetrical bulk and tone with 5/5 motor testing. Dkt. #6-8, p.63. Dr. Stroffman could not provide any explanation for plaintiff's complaints of continued back pain and suggested a physiatry evaluation. Dkt. #6-8, p.64.

Plaintiff's primary care physician continued to note that plaintiff was tender to palpitation to midline spine in the lower lumbar region and that her gait and ability to stand from a sitting position was slow. Dkt. #6-9, pp. 96, 101 & 106. Beginning in October of 2017, plaintiff's primary care physician noted that plaintiff was tender to palpitation and that her gait was slow. Dkt. #6-9, pp.73, 78, 85, 90 & 96 & 158. She was also noted to be wearing a back brace on January 16, 2018 and March 1, 2018. Dkt. #6-9, pp. 96 & 158.

The ALJ also recognized that plaintiff continued to receive cortisone injections in her left knee and that she was diagnosed with chondromalacia of the right knee, for which she received cortisone injections. Dkt. #6-2, pp.20-21. Plaintiff reported that her knee never felt good after the left arthroscopy with meniscectomy and chondroplasty on June 23, 2015. Dkt. #6-8, p.20. Upon examination on March 3, 2016, plaintiff was observed to have patellar crepitus and tenderness of the medial and lateral joint line on palpation of her left knee . Dkt. #6-8, p.22. She received a cortisone injection to calm the inflammation. Dkt. #6-8, p.22. On May 25, 2016, plaintiff also reported right knee pain, which was diagnosed as osteoarthritis of the right knee and treated with a cortisone injection. Dkt. #6-8, p.34. Plaintiff subsequently received bilateral cortisone injections to treat osteoarthritis of both knees on September 12, 2016. Dkt. #6-8, p.38. On April 10, 2017, plaintiff was diagnosed with bilateral osteoarthritis of both knees, as well as bilateral chondromalacia patellae, with weakness and instability on the left side and received bilateral steroid injections. Dkt. #6-8, pp.42-43. Injections were repeated on September 22, 2017, at which time plaintiff

was prescribed a brace to stabilize her left knee. Dkt. #6-8, pp.46-47. On September 22, 2017, an examination by plaintiff's orthopedist revealed patellar crepitus and tenderness of both knees but no obvious instability and intact motor strength. Dkt. #6-8, p.46. Her active range of motion lacked 10 degrees of extension to 100 degrees of flexion on the left and 5 degrees of extension from neutral to 105 degrees flexion on the right. Dkt. #6-8, p.46. Generalized lower extremity tightness with hamstring tightness on straight leg raise with IT band tightness and hip rotator tightness was noted with range of motion testing. Dkt. #6-8, p.46. Strength was measured at 4+/5 in flexion/extension. Dkt. #6-8, p. 46. Instability tests were negative. Dkt. #6-8, p.46.

Plaintiff's post-surgical medical records are not so clear that the ALJ could assess functional limitations without the assistance of competent medical opinion. *See Ippolito v. Comm'r of Soc. Sec'y*, 18-CV-403, 2019 WL 3927453, at *4-5 (W.D.N.Y. Aug. 19, 2019) ("Court cannot conclude that Plaintiff's impairments were so mild as to permit the ALJ to assess his RFC without the benefit of a competent medical opinion."); *Grimes v. Berryhill*, 17-CV-1302, 2019 WL 2511130, at *4 (W.D.N.Y. June 18, 2019) (post-operative evidence of ongoing impairments required medical opinion evidence as to the exact level of work plaintiff could perform); *Cf. Monroe v. Comm'r of Soc. Sec'y*, 676 Fed. App'x 5, 8 (2d Cir. 2017) (contemporaneous medical assessments of characteristics relevant to functional capacity sufficient to allow ALJ to determine RFC)*; Johnson v. Colvin*, 669 Fed. App'x 44, 46-47 (2d Cir. 2016) (post-surgical opinion that plaintiff had made clinical improvement and would benefit from increased exercise, combined with plaintiff's testimony as to activities of daily living adequate to support

determination that plaintiff could perform light work). As the only medical opinion of record failed to account for plaintiff's spinal surgery and newly diagnosed right knee condition, the ALJ's assessment of plaintiff's RFC is not supported by substantial evidence.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #8), is granted in so far as plaintiff seeks remand for further proceedings and the Commissioner's motion for judgment on the pleadings (Dkt. #11), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**     **Buffalo, New York**
              **August 3, 2020**

                                          *s/ H. Kenneth Schroeder, Jr,*
                                          **H. KENNETH SCHROEDER, JR.**
                                          **United States Magistrate Judge**